IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| FADEEL NAHIL SHUHAIBER, | ) | |
| | ) | Case No. 18 CV 01305 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Judge John Robert Blakey |
| | ) | |
| RANDY PFISTER, GEORGE ADAMSON, WALTER NICHOLSON, | ) ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

In this prisoner suit, Plaintiff Fadeel Nahil Shuhaiber alleges that, while he was in the custody of the Illinois Department of Corrections (IDOC) at Stateville Correctional Center's Northern Reception and Classification Center, Defendants Randy Pfister, George Adamson, and Walter Nicholson violated his First Amendment right of Free Exercise by providing him a "vegan diet," rather than a "kosher diet." Plaintiff brings his claims under the Religious Land Use and Institutionalized Persons Act against the current warden, Walter Nicholson, and 42 U.S.C. § 1983 against the former warden, Randy Pfister, as well as the chaplain, George Adamson.

The parties filed cross motions for summary judgment. [146], [149]. In response to Defendants' motions, Plaintiff abandoned his RLUIPA claim against Nicholson, [152] at 2 n. 1, and the Court thus grants as unopposed Defendants' motion as to Nicholson. For the reasons described more fully below, the Court also grants

Defendants' motion for summary judgment as to Defendant Pfister [146] and denies Plaintiff's motion for summary judgment [149].

## I. Factual Background[1]

Plaintiff was born Muslim. [154] ¶ 8. His only "practice in Islam is the food" he eats; Plaintiff does not practice any other element of Islam. [150-5] at 24:24–25:1–14. According to Plaintiff, his religion requires a kosher diet, which prohibits pork, soy, and certain types of fish. [150-5] at 25:15–28:13. In August 2017, Plaintiff arrived at Stateville Correctional Center.

Inmates at Stateville may obtain kosher meals as a religious accommodation. [154] ¶¶ 14, 15; [150-8] at 12:14–13:14. To receive the special diet, an inmate must submit a formal request through a specific form to the correctional counselors, who refer the request to a chaplain for approval or denial. [150-8] at 12:14–13:14. The warden then signs off on the chaplain's decision. [154] ¶ 42.

When he arrived at Stateville, Plaintiff chose not to request a kosher diet tray. [150-5] at 38:6–39:4. Instead, Plaintiff received the standard food tray, discarded any food he could not eat, and ate the remaining food. *Id.* at 39:10–24. Plaintiff claims, however, that, in December 2017, he did request a kosher diet; he testified that he filled out the form and dropped it off in the counselors' request box. [150-5] at 88:10–

---

[1] Both parties filed a statement of undisputed facts in support of their motions for summary judgment pursuant to L.R. 56.1(a). *See* [150]; [147]. Defendants have asked the Court to strike several paragraphs from the Plaintiff's statement of undisputed facts, alleging that Plaintiff misrepresented evidence, failed to support facts with adequate citations, and posited improper legal arguments. [155] at 2. The Court declines to make any ruling regarding specific paragraphs and looks rather to the underlying exhibits where needed. The following factual background disregards any unsubstantiated or argumentative assertions of fact. *See Cady v. Sheahan*, 467 F.3d 1057, 1060–61 (7th Cir. 2006).

21. Defendants dispute that Plaintiff ever requested a kosher diet, [154] ¶ 13, and the record does not contain any request form.

On December 2, 2017, Plaintiff filed Grievance No. 1055, stating in part, "I requested Qoasher [*sic*] diet several times I even wrote chaplain but they still give me regular tray." [150-6] at 3.[2] The Stateville Grievance Department received the grievance on December 11, 2017, and, on January 8, 2018, Grievance Officer Andrea Rigsby concluded that Shuhaiber remained eligible for a kosher diet, but that the Chaplain's office had not received any such request. [147-5] at 4. Warden Pfister's office signed off on the grievance report. *Id.*; [153] ¶¶ 2, 8, 11.

On December 8, 2017, Plaintiff filed Grievance No. 1308, again complaining that he had not received a kosher diet. [147-5] at 6. On December 12, 2017, Counselor Heather Williams noted in Plaintiff's Cumulative Counseling Summary (CCS), "Received offender request for religious kosher diet tray. Sent to chaplain.". [150-11] at 6. It is not clear whether Williams' notation refers to Grievance No. 1055, Grievance No. 1308, neither grievance, or both grievances. *See id.* at 7; [154] ¶ 21.

On January 16, 2018, Heather Williams supplemented her note to say she had spoken with Chaplain Adamson, who reported that he had received Plaintiff's request for kosher tray and would "approve a vegan tray for him and notify dietary." [150-11] at 6. This same conversation is noted in the Grievance Officer's Report in response to Plaintiff's Grievance No. 1308, dated February 7, 2018, and further notes that Plaintiff was receiving a vegan diet tray. [147-5] at 8. Adamson does not

---

[2] Plaintiff admitted during discovery in this case that, in fact, this was false; he never sent the Chaplain a letter requesting a kosher diet. [150-5] at 107:7–9.

3

remember this conversation and testified at his deposition that, as a matter of practice, he did not operate this way and would have documented any requests and action in writing. [150-4] at 45:18–46:14. Counselor Williams also had no independent memory of the conversation about Plaintiff's dietary request. [150-8] at 20:14–17.

Defendant Pfister was promoted from Warden to Deputy Director of the Northern District for IDOC as of February 1, 2018, and Defendant Walter Nicholson assumed the position of Warden. [147] ¶2; s*ee* [147-5] at 8. Plaintiff filed his complaint on February 20, 2018, and his claims against Chaplain Adamson, former Warden Pfister and Warden Nicholson survived screening review by this Court. [1] at 1; [17] at 4. Plaintiff left Stateville on July 27, 2018 and was transferred to Lawrence Correctional Center. [148] at 3. On May 2, 2019, Immigration and Customs Enforcement took custody of Plaintiff and he was deported from the United States on March 10, 2021. *Id.*

## II. Legal Standards

A party seeking summary judgment must show that there exists no genuine "dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). A genuine dispute as to a material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In evaluating a summary judgment motion, the Court must "construe all facts and reasonable inferences in the light most favorable to the nonmoving party." *Id.* Further, "a court may not make credibility

4

determinations, weigh the evidence, or decide which inferences to draw from the facts" since "these are the jobs for a fact finder." *Johnson v. Advocate Health and Hosps. Corp.*, 982 F.3d 887, 892 (7th Cir. 2018).

Once a party has "made a properly supported motion for summary judgment," however, "the opposing party may not simply rest upon the pleadings but must instead submit evidentiary materials that 'set forth specific facts showing that there is a genuine issue for trial.'" *Harney v. Speedway SuperAmerica, LLC*, 526 F.3d 1099, 1104 (7th Cir. 2008) (quoting Fed. R. Civ. P. 56(e)). A mere "scintilla of evidence" supporting the non-movant's position does not suffice. *Anderson*, 477 U.S. at 248. Instead, "there must be evidence on which the jury could reasonably find" for the non-moving party. *Id.* at 252.

### III. Analysis

The parties' cross motions for summary judgment pose two issues: (1) whether Plaintiff met the summary judgment standard to demonstrate a Free Exercise violation; and (2) whether Defendant Pfister met the summary judgment standard to establish he was not personally involved in the alleged constitutional violation.

A. <u>Plaintiff's Motion for Summary Judgment</u>

Plaintiff moves for summary judgment on his claim under § 1983, alleging that Defendants Pfister and Adamson violated his Free Exercise Clause rights when they provided Plaintiff with a vegan, not kosher, diet. Under the First Amendment, prisons "must permit inmates the reasonable opportunity to exercise religious freedom." *Maddox v. Love*, 655 F.3d 709, 719 (7th Cir. 2011). Prison officials violate

an inmate's constitutional rights if they "personally and unjustifiably place a substantial burden on" an inmate's "religious practices." *See Thompson v. Holm*, 809 F.3d 376, 379 (7th Cir. 2016). A substantial burden "puts substantial pressure on an adherent to modify his behavior and to violate his beliefs," and "is unjustified if it is not reasonably related to a legitimate penological interest." *Id.* (first quoting *Thomas v. Review Bd.*, 450 U.S. 707, 717–18 (1981); and then quoting *Turner v. Safley*, 482 U.S. 78, 89–91 (1987)). If a prison fails to accommodate a prisoner's religious diet, that action constitutes a substantial burden and violates the prisoner's free exercise rights. *See id.* (collecting cases). In a free exercise claim, the Plaintiff has the burden of proving that the prison official's actions substantially burdened his religious practice. *See Neely-Bey Tarik-El v. Conley*, 912 F.3d 989, 1003 (7th Cir. 2019).

Stateville requires inmates to follow a formal procedure to request a religious diet accommodation, and Plaintiff takes no issue with the procedure itself. *See* [18]. And rightly so: the regulation alone does not infringe on Plaintiff's right, as the burden of formally requesting the religious diet is "reasonably related to legitimate penological interests." *See Turner*, 482 U.S. at 89. IDOC provides thousands of daily meals, and a formal documentation process for special dietary needs, religious or otherwise, supports the prison's interest in orderly administration. *See Koger v. Bryan*, 523 F.3d 789 (7th Cir. 2008) (citing *Resnick v. Adams*, 348 F.3d 763, 769 (9th Cir. 2003)) ("Orderly administration of a prison dietary system, and the accommodations made thereunder, are legitimate concerns of prison officials.").

If Plaintiff formally requested a kosher meal as a religious accommodation, and Defendants refused to provide that meal, that refusal would likely violate the Constitution. *See Thompson*, 809 F.3d at 380. Absent a proper request, however, prison officials had no obligation to provide Plaintiff the religious accommodation. *See Resnick*, 348 F.3d at 771 (finding no constitutional free exercise violation where prison officials did not provide inmate kosher meals because inmate did not complete required form). Plaintiff's alleged injury, then, arises only if he properly requested a kosher meal.

Plaintiff claims he made a proper, formal request on or before December 2, 2017; Defendants dispute the point. No evidence resolves this genuine question of material fact—whether Plaintiff properly requested a religious diet accommodation. The entries by Williams in Shuhaiber's CSS do not definitively prove that Plaintiff properly requested a kosher diet, nor do Williams or Defendant Adamson remember a formal request by Plaintiff. The record does not contain a request form by Plaintiff, only several grievances that reference an alleged request. A reasonable jury could conclude that Plaintiff never formally requested a kosher diet and, as a result, prison officials were not obligated to provide the religious accommodation. *Cf Thompson*, 809 F.3d at 378–79 (vacating district court's grant of summary judgment in favor of prison staff where disputed facts existed concerning *why* the inmate did not receive his desired religious diet accommodation).

7

B. <u>Defendant Pfister's Motion for Summary Judgment</u>

To win on his § 1983 claim against the warden, Plaintiff must demonstrate that Pfister was "personally involved" in the alleged deprivation. *Gentry v. Duckworth*, 65 F.3d 555, 561 (7th Cir. 1995). Pfister argues that he was not personally involved in the alleged deprivation of Plaintiff's constitutional right, and so judgment in his favor remains appropriate. [148] at 4. Liability under § 1983 remains "premised upon the wrongdoer's personal responsibility"; an individual "cannot be held liable in a § 1983 action unless he caused or participated in an alleged constitutional deprivation." *Kuhn v. Goodlow*, 678 F.3d 552, 555–56 (7th Cir. 2012). Prison officials like Warden Pfister satisfy the personal responsibility requirement of § 1983 "if the conduct causing the constitutional deprivation occurs at the official's direction or with his or her knowledge and consent." *Williams v. Shah*, 927 F.3d 476, 482 (7th Cir. 2019) (citing *Gentry*, 65 F.3d at 561).

To the extent the record might indicate that Plaintiff properly requested a kosher diet and was denied, the record contains no evidence that Pfister ever was personally involved in Plaintiff's alleged constitutional violation. Plaintiff concedes that Pfister neither signed Grievance No. 1055, nor had personal knowledge of Plaintiff's grievances. [153] ¶¶ 8, 11, 17. Rather, Pfister delegated his responsibility to review inmate grievances, as permitted under Illinois law. *See* 20 Ill. Adm. Code 504.805(a); *Dupree v. Hardy*, 960 N.E.2d 1, 8 (Ill. App. Ct. 2011) (holding that director can delegate review of inmate's grievance appeal because director is not personally required to review appeals); *Birch v. Jones,* 02 CV 2094, 2004 WL 2125416, at *7

8

(N.D. Ill. Sept. 22, 2004) ("The warden may delegate the responsibility to review inmate grievances.") (quoting *Goodman v. Carter*, No. 00 C 0948, 2001 WL 755137, at *5 (N.D. Ill. Jul. 2, 2001)). Plaintiff offers no evidence to suggest that Pfister's delegation resulted in a knowing violation of or reckless indifference to Plaintiff's constitutional rights regarding his religious meal accommodation request. Therefore, Defendants' motion for summary judgment is granted in relevant part. *See Stockton*, 44 F.4th at 619 (finding summary judgment for defendants appropriate where "no reasonable jury could conclude" that supervisor defendants "were personally involved" or "facilitated, approved, or turned a blind eye" to constitutional violation).

Likewise, to the extent Plaintiff claims that providing a "vegan diet," rather than a "kosher diet," amounts to a constitutional violation, his claim also fails.[3] Plaintiff asserts his religion requires him to follow a kosher diet, which forbids pork, soy, and certain types of fish. [150-5] 25:15–28:13. Stateville placed him on a vegan diet, consisting of salad, sometimes cheese, and cereal, [147-5] at 8; [150-5] at 44:21–45:7, all of which Plaintiff admits remain permitted under his practice of Islam. *Id.* at 47:20–48:2. Plaintiff does not argue (and certainly provides no evidence), that the vegan diet in any way impeded his ability to keep kosher, as required by his religious practice. Indeed, his deposition testimony suggests that he simply did not like the vegan meals the prison provided. *Id.* at 45:8–13 ("All what I remember is being fed

---

[3] Plaintiff admits that, after arriving at Stateville in August 2017, he ate "the three standard trays that they have served at Stateville, breakfast, lunch, and dinner" and did not express a desire for any religious accommodation until either November or December, three months later. [150-5] at 39:10–19. The record shows that Chaplain Adamson became aware of a religious accommodation request on December 12th, and the record shows that Plaintiff was receiving a vegan diet by February 7th, less than two months later.

9

salad over salad over salad . . . I've suffered horribly because of being fed like a cow salad for over a period of five months"); *id.* at 48:1–3 ("Cheese, I'm allowed to eat cheese according to my religion; but according to my medical needs, no, I'm not allowed to eat cheese."); *id.* ("You've denied my right to eat meat. You've denied me the right to eat chicken.").

As the "put up or shut up" moment, the summary judgment stage requires a Plaintiff to show what evidence he has that would convince a trier of fact to accept his version of events. *Wade v. Ramos*, 26 F.4th 440, 446 (7th Cir. 2022) (quoting *Shacht v. Wis. Dep't of Corr.*, 175 F.3d 497, 504 (7th Cir. 1999)). If Plaintiff's claims are "backed up by a measure of plausible evidence," that "might well merit a trial"; alternatively, if "there is not enough support" for "a factfinder to rule in their favor," summary judgment is appropriate. *Id.* In a free exercise claim, the Plaintiff has the burden of proving that the prison official's actions substantially burdened his religious practice. *See Neely-Bey Tarik-El v. Conley*, 912 F.3d 989, 1003 (7th Cir. 2019). The record contains no evidence that Plaintiff's vegan diet failed to meet the dietary requirements of Plaintiff's religion, even if the vegan diet was stricter than a kosher diet.[4] Without any plausible evidence that the vegan diet somehow infringed

---

[4] Although not clearly articulated in his pleadings, Plaintiff does claim that if something "is cooked with something that is not kosher or halal," then the resulting food does not qualify as kosher, [150-5] at 79:12–13, yet the record as whole presents no evidence that Stateville's vegan diet preparation was contaminated with soy, pork, or certain types of fish—the food Plaintiff stated he cannot eat in a kosher diet based upon his religion. Instead, the record confirms that Plaintiff ate Stateville's standard meal trays for three months without complaint, picking out the non-kosher food and eating the remaining "kosher" food, even though it had been prepared alongside non-kosher food. Further, the record reflects that Chaplain Adamson was familiar with Muslims practicing Al Islam who requested vegan meals. [150-4] at 21:5–16, 34:14–17. Since Plaintiff has the burden of proving a free exercise violation, Plaintiff was required to show some evidence that Stateville's vegan diet

10

on Plaintiff's religious practices, Plaintiff cannot show that his free exercise claim merits a trial. For these reasons, in addition to those described above, the Court grants summary judgment in favor of Defendant Pfister.

For the same reasons, the Court grants summary judgment in favor of Defendant Adamson, who allegedly authorized a vegan diet for Plaintiff. While Defendant Adamson did not move for summary judgment due to disputed facts, that factual dispute appears to concern the extent of Adamson's personal involvement in Plaintiff's request for a kosher diet. [148] at 1 n.2; *see also* [154] at ¶¶ 18, 21. Regardless of Adamson's personal involvement, however, the record fails (as with Pfister) to offer even a "scintilla of evidence" that Plaintiff's vegan diet interfered with his religious beliefs under the right of free exercise. A district court may grant summary judgment on its own motion when "there are no issues of material fact in dispute" and where granting another defendant's "motion would bar the claim against those non-moving defendants." *Osler Inst., Inc. v. Forde*, 333 F.3d 832, 836 (7th Cir. 2003); *Ellis v. DHL Express Inc. (USA)*, 633 F.3d 522, 529 ("Where one defendant succeeds in winning summary judgment on a ground common to several defendants, the district court may also grant judgment to the non-moving defendants, if the plaintiff had an adequate opportunity to argue in opposition.") (citing *Acequia, Inc. v. Prudential Ins. Co. of Am.*, 226 F.3d 798, 807 (7th Cir. 2000)). Having determined that Plaintiff's claims against Pfister must be dismissed for lack of evidence to

---

preparation violated the kosher requirements of his religion. Without such evidence, however, Plaintiff has failed to meet his burden for a free exercise claim.

suggest that a constitutional violation occurred, the Court also dismisses Plaintiff's claims against Adamson alleging the same constitutional violation on the same facts.

## IV. Conclusion

For the reasons explained above, this Court grants Defendants' motion for summary judgment [146], denies Plaintiff's motion for summary judgment [149], and directs the Clerk to enter judgment in favor of Defendants and against Plaintiff on all claims. All dates and deadlines are stricken. Civil case terminated.

Date: October 14, 2025

Entered:

John Robert Blakey
United States District Judge